ACCEPTED
03-15-00093-CV
5808716
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/24/2015 3:03:48 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00093-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

6/24/2015 3:03:48 PM

JEFFREY D. KYLE
Clerk

In the Court of Appeals for the
Third District of Texas at Austin

CITY OF HOUSTON,

*Appellant*

v.

KEN PAXTON, ATTORNEY GENERAL OF TEXAS,

*Appellee*

On Appeal from the 250th Judicial District Court
Travis County, Texas
Trial Court Case No. D-1-GV-14-000227

## Brief of Appellant

Donna L. Edmundson
City Attorney

Judith L. Ramsey
Chief, General Litigation Section

Mary E. ("Mary Beth") Stevenson
Assistant City Attorney
SBN: 24072366
CITY OF HOUSTON LEGAL
DEPARTMENT
900 Bagby, Fourth Floor
Houston, Texas  77002
832.393.6491 (Telephone)
832.393.6259 (Facsimile)
marybeth.stevenson@houstontx.gov

*Attorneys for Appellant*

*Oral Argument Requested*

## Identity of Parties and Counsel

A complete list of the names and addresses of all parties to the trial court's final judgment and to this appeal and their counsel is as follows:

| Appellant: | Counsel for Appellant: |
|---|---|
| The City of Houston | Appellate Counsel: |
| | Mary E. (Mary Beth) Stevenson<br>Assistant City Attorney<br>CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, 4th Floor<br>Houston, Texas 77002<br>marybeth.stevenson@houstontx.gov |
| | Trial Counsel: |
| | David L. Red<br>Senior Assistant City Attorney<br>CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, 4th Floor<br>Houston, Texas 77002<br>david.red@houstontx.gov |

| Appellee: | Counsel for Appellee: |
|---|---|
| Ken Paxton, Attorney General of Texas | Trial and Appellate Counsel: |
| | Matthew R. Entsminger<br>Assistant Attorney General<br>Open Records Litigation<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>matthew.entsminger@texasattorneygeneral.gov |

# Table of Contents

**Page**

Identity of Parties and Counsel ..................................................................ii

Index of Authorities .............................................................................. vi

Statement of the Case.......................................................................... ix

Statement Regarding Oral Argument ........................................................ x

Issue Presented ................................................................................... x

Statement of Facts.............................................................................. 1

I.    Mayor Parker promulgates Executive Order 1-39 Revised, establishing the Office of Inspector General under the supervision of the City Attorney. .......................................................... 1

II.    City policy as set forth in Executive Order 1-39 Revised requires all City employees to cooperate fully with any OIG investigation.......... 2

III.    A lawyer from the OIG conducts an internal investigation on behalf of the City. ..................................................................2

IV.    An attorney representing a Respondent employee who was interviewed files a request pursuant to the Texas Public Information Act ("TPIA" or "Act") for the OIG report and supporting evidence. ...................................................... 3

Summary of the Argument ...................................................................5

Argument and Authorities.....................................................................6

I.    Standard of review for cross-motions for summary judgment. ............... 6

II.    Information protected by the attorney-client privilege is not subject to disclosure under the TPIA. .......................................... 7

    A.    The TPIA requires disclosure of public information unless an exception applies. ...................................................... 7

B. Texas Rules of Evidence comprise "other law" that makes information "expressly confidential" and not subject to disclosure under the TPIA. ....................................................... 8

C. The attorney-client privilege. ..................................................... 9

III. The information at issue was part of an internal investigation conducted at the behest of the City by City attorneys at OIG to provide legal advice to the City. ....................................................... 12

A. The Attorney General's piecemeal approach to the investigative file is contrary to this Court's precedent and other case law. ....................................................... 13

B. The parties involved in each communication at issue are identified on the face of the documents in question as being an attorney for the City and a City employee. ........................... 18

C. Counsel for the City conducted the internal investigation in order to give advice to the City as the client. ........................... 18

D. The communication is and has remained confidential. .............. 19

E. The communication was made at the direction of the City and pursuant to the City's policy of full employee cooperation with the OIG. ..................................................... 20

F. The factual information Jenkins seeks is available through other means. ....................................................... 21

IV. The City did not waive its privilege with respect to the Information at Issue. ....................................................... 23

A. The Attorney General has no evidence and there is no indication that the City disclosed the information at issue. .......... 23

B. Making the Brooks statement available to his attorney does not waive the privilege for the information at issue. ................... 24

Conclusion and Prayer ....................................................... 26

Certificate of Compliance ....................................................... 27

Certificate of Service ............................................................................... 28

Appendix

      A.     Final Judgment (10/28/2014)

      B.     Tex. R. Evid. 503

      C.     Tex. Gov't Code § 552.3221

      D.     Tex. Gov't Code § 552.324

      E.     Tex. Gov't Code § 552.108

# Index of Authorities

**Page(s)**

## Cases

*Abbott v. City of Dallas*,
453 S.W.3d 580 (Tex. App.—Austin 2014, pet. filed) ................................ 8

*Alpert v. Riley*,
267 F.R.D. 202 (S.D. Tex. 2010) ............................................................ 14

*Barnes v. Whittington*,
751 S.W.2d 493 (Tex. 1988) (orig. proceeding) ..................................... 23

*Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*,
46 S.W.3d 880 (Tex. 2001) .................................................................. 6-7

*Comm'rs Court of Titus Cnty. v. Agan*,
940 S.W.2d 77 (Tex. 1997) ..................................................................... 6

*Dunn v. State Farm Fire & Cas. Co.*,
927 F.2d 869 (5th Cir. 1991) ................................................................ 22

*Ferguson v. Bldg. Materials Corp. of Am.*,
295 S.W.3d 642 (Tex. 2009) .................................................................. 6

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000) ..................................................................... 6

*Harlandale Indep. Sch. Dist. v. Cornyn*,
25 S.W.3d 328 (Tex. App.—Austin 2000, pet. denied) ...................... passim

*Huie v. DeShazo*,
922 S.W.2d 920 (Tex. 1996) .................................................................... 9

*In re Carbo Ceramics Inc.*,
81 S.W.3d 369 (Tex. App.—Houston [14th Dist.] 2002, orig.
proceeding) ........................................................................................ 24

*In re City of Georgetown*,
53 S.W.3d 328 (Tex. 2001) ...................................................................... 8

*In re E.I. DuPont de Nemours and Co.*,
  136 S.W.3d 218 (Tex. 2004) ...................................................... 10, 11, 14

*In re USA Waste Mgmt. Res., L.L.C.*,
  387 S.W.3d 92 (Tex App.—Houston [14th Dist.] 2012, orig.
  proceeding) ........................................................................16, 17, 18, 19

*In re Valero Energy Corp.*,
  973 S.W.2d 453 (Tex. App.—Houston [14th Dist.] 1998, no pet.).........9, 17

*Jones v. Strauss*,
  745 S.W.2d 898 (Tex. 1988) ...................................................................6

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
  289 S.W.3d 844 (Tex. 2009) ...................................................................7

*Marathon Oil Co. v. Moye*,
  893 S.W.2d 585 (Tex. App.—Dallas 1994, orig. proceeding) .......... 9, 23, 24

*Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*,
  323 S.W.3d 151 (Tex. 2010) ...................................................................7

*Nat'l Tank Co. v. Brotherton*,
  851 S.W.2d 193 (Tex. 1993) ................................................................. 11

*Nat'l Union Fire Ins. Co. v. Hoffman*,
  746 S.W.2d 305 (Tex. App.—Dallas 1988, orig. proceeding) ................... 25

*Nixon v. Mr. Prop. Mgt. Co.*,
  690 S.W.2d 546 (Tex. 1985) ................................................................... 7

*Upjohn Co. v. United States*,
  449 U.S. 383, 101 S. Ct. 677 (1981) .................................................passim

*West v. Solito*,
  563 S.W.2d 240 (Tex. 1978) ................................................................. 23

**Statutes**

Tex. Gov't Code §§ 552.001 *et seq.* .......................................................... 4

Tex. Gov't Code § 552.001 ........................................................................ 7

Tex. Gov't Code § 552.022 ................................................................. 8

Tex. Gov't Code § 552.108 ............................................................... 23

Tex. Gov't Code § 552.301 ............................................................... 23

Tex. Gov't Code § 552.3221 ............................................................. 23

**Other Authorities**

Tex. Att'y Gen. Op. No. OR2014-02684,
    2014 WL 1254396 (Feb. 12, 2014) ........................................... 11

Tex. R. Civ. P. 166a ........................................................................... 7

Tex. R. Evid. 503 ................................................................. 9, 10, 11

Texas Disciplinary Rule of Professional Conduct 1.12 ................... 25

# Statement of the Case

*Nature of the Case:*  This is a suit brought by a governmental body pursuant to Texas Government Code section 552.324 seeking to withhold information from a requestor as privileged under Texas Rules of Evidence 503. CR_3-5.

*Course of Proceedings:*  The City timely requested an Attorney General decision letter pursuant to Texas Government Code section 552.301 regarding a portion of the requested documents. CR_8-11. The Attorney General held that most of the information was protected by attorney-client privilege, but other information was not protected by that privilege and must be disclosed. CR_27. The City brought suit against the Attorney General seeking to withhold the information that the Attorney General held was not privileged. CR_3-5.

*Disposition:*  On cross motions for summary judgment, the trial court held that the information at issue was subject to disclosure because the attorney-client privilege did not apply to that information. CR_109.

*Trial Court:*  Hon. Stephen Yelenosky
250th Judicial District Court
Travis County, Texas

## Statement Regarding Oral Argument

The City of Houston respectfully requests oral argument.

## Issue Presented

### Issue 1

The trial court erred when it denied the City's motion for summary judgment and granted the Attorney General's motion for summary judgment because the City established that the communications at issue are protected by the attorney-client privilege as a matter of law and there is no evidence that the City waived its privilege with respect to the information at issue.

**Statement of Facts**

**I.      Mayor Parker promulgates Executive Order 1-39 Revised, establishing the Office of Inspector General under the supervision of the City Attorney.**

On March 1, 2011, Mayor Parker approved Executive Order 1-39 Revised, which established the Office of Inspector General (OIG) as a division of the Office of the City Attorney and under the City Attorney's supervision. CR_14-18 (*see* section 2.1). Ms. Robin Curtis, who is a board certified Labor and Employment Law attorney, was appointed and currently serves as the City's Inspector General (IG). CR_19. Ms. Sandra W. Robinson is also an attorney working in the OIG in the City's Legal Department. CR_19.

The Executive Order establishing the OIG specifically provides that the OIG has the responsibility to "[s]upply information, which information may be protected from public disclosure as provided by law, to … Directors of City Departments to facilitate investigations of allegations of employee misconduct and any associated disciplinary actions or enforcement of civil or criminal laws." CR_14-15 (Section 5.1.3). Additionally, the OIG "may consult with the City Controller regarding allegations of employee misconduct that may expose the City to significant financial loss." CR_15 (Section 5.3). The Inspector General "shall supervise the OIG in its investigation of fraud, corruption, waste, mismanagement, conflicts of interest, ethics violations, discrimination

and violations of state or federal law, the City Charter, City Ordinances, City Council Code of Conduct, Executive Orders, Administrative Procedures, or Mayor's Policies." CR_15 (Section 5.2).

## II. City policy as set forth in Executive Order 1-39 Revised requires all City employees to cooperate fully with any OIG investigation.

The OIG City policy expressly states that "[a]ll City employees and appointed officials shall cooperate fully with any investigation conducted by the OIG and must provide truthful information, written statements, documents, and related materials upon OIG's request." CR_16 (Section 5.7.3). Further, the policy provides that "[a]ny City employees or appointed official who fails to fully cooperate with any OIG investigation violates this Executive Order and, accordingly, commits misconduct." CR_16 (Section 5.7.4).

## III. A lawyer from the OIG conducts an internal investigation on behalf of the City.

In early 2013, an attorney for the City working in the Office of the Inspector General in the City's Legal Department conducted an internal investigation into alleged wrongdoing of City employees pursuant to Office of Inspector General's Complaint #111-100288-001(HCCSC). *See* CR_19 (listing City Legal Department personnel); (Information at Issue (IAI) at AG Jenkins(Brooks)00008, 00024 (naming the City lawyer in the OIG who

2

conducted the interviews); CR_12-13. That attorney interviewed City employees in order to ascertain whether the allegations of wrongdoing had any factual basis on which OIG gave legal advice about possible courses of action to the City. *See, e.g.*, IAI at AG Jenkins(Brooks)00008-14, 00024-28; *see also* CR_12-13 (referring to Mr. Brooks's pre-termination hearing). Each interviewee initialed the preamble statement, which, among other things: explained they were furnishing the statement voluntarily and not as a condition of employment with the City; stressed the confidential nature of the document and that it not be disclosed, except to that interviewee's individual attorney; and instructed each interviewee to provide complete information to the OIG attorney investigator. *See* IAI at AG Jenkins(Brooks)00008, 00024.

IV. **An attorney representing a Respondent employee who was interviewed files a request pursuant to the Texas Public Information Act ("TPIA" or "Act") for the OIG report and supporting evidence.**

On October 29, 2013, the City received a TPIA request from Ms. Stacey M. Jenkins, counsel for Mr. Willie Brooks, for records related its investigation of certain City of Houston employees, including Mr. Brooks, as a result of OIG Complaint #111-100288-001(HCCSC). CR_12-13. The City made available certain information to Ms. Jenkins and timely requested an Attorney General opinion on the remainder on November 12, 2013. CR_21-24. The City asserted in its letter that the information at issue was not subject to

3

disclosure pursuant to section 552.108 of the TPIA[1] and to the attorney-client communication privilege found in Texas Rule of Evidence 503. CR_21-24.

On February 14, 2014, the City received Open Records Letter Ruling OR2014-02684 from the Attorney General. CR_25-29. The Attorney General agreed with the City concerning *most* of the information that the City sought to withhold. CR_27 ("[W]e find that you have established most of the submitted information is protected by attorney-client privilege.") (citing *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328 (Tex. App.—Austin 2000, pet. denied)). The Attorney General opined that certain other information was not privileged and therefore subject to disclosure. CR_27. Of that information, the only "information at issue" remaining on appeal are two statements from Respondent employees who were interviewed by a lawyer in the OIG as part of the investigation into possible employee wrongdoing in a City program. *See* IAI at AG Jenkins(Brooks)00008-14 and AG Jenkins(Brooks)00024-28 (a portion of the "Information at Issue" submitted to the Court for *in camera* review).[2]

---

[1] Tex. Gov't Code §§ 552.001 *et seq*.

[2] Although two other documents were part of the "Information at Issue" submitted to the trial court for in camera review, the City has made AG Jenkins(Brooks)00002 (a letter) and AG Jenkins(Brooks)00004 (a letter) available to the requestor and those are not at issue on appeal.

On February 24, 2014, as required by the statute to appeal, the City sued the Attorney General pursuant to section 552.324 of the TPIA challenging the finding in Open Records Letter Ruling OR2014-02684 that a few of the documents gathered in the City's internal investigation were subject to disclosure. CR_3-5. On cross motions for summary judgment, the trial court granted the Attorney General's motion, denied the City's motion, and entered judgment that the "information at issue" is subject to disclosure. CR_109.

The City now appeals.

## Summary of the Argument

The information at issue in this case—two Respondent interviewee statements by City employees taken in the course of an internal investigation by the OIG in the City Attorney's office—is not subject to disclosure because it is protected by attorney-client privilege under Texas Rule of Evidence 503. The OIG conducted the investigation at the behest of its client, the City, and the information at issue is part of the OIG's investigative report. City employees who gave confidential statements to the City's attorney in the OIG were acting according to City policy of cooperating with OIG investigations. This cooperation furthered the City's purposes of obtaining legal advice about what legal courses of action to take regarding the allegations of wrongdoing in one of its departments that affected a City program.

There is no evidence that the City waived its privilege in this case with respect to the information at issue and no evidence that any other exception to the privilege applies. The privilege belongs to the City, and the City has maintained the confidentiality of the information at issue in this case. Accordingly, the Court should reverse the trial court's judgment and render judgment for the City that the remaining "information at issue" is protected by attorney-client privilege and is not subject to disclosure.

## Argument and Authorities

### I.    Standard of review for cross-motions for summary judgment.

Courts review a trial court's decision to grant summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009). When both parties move for summary judgment and the trial court grants one motion and denies the other, courts review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citing *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988)). When reviewing cross-motions for summary judgment, courts consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d

880, 884 (Tex. 2001); *see also Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 153-54 (Tex. 2010).

To succeed on a motion for summary judgment, a party must show that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

## II. Information protected by the attorney-client privilege is not subject to disclosure under the TPIA.

### A. The TPIA requires disclosure of public information unless an exception applies.

The TPIA provides, "it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001. A completed investigation is considered public information under the TPIA unless it is subject to an exception. Section 552.022 of the TPIA provides, in relevant part:

> The following categories of information are public information and not exempted from required disclosure under this chapter unless they are expressly confidential under other law:
>
> (1) a completed report, audit, evaluation, or investigation made of, for, or by a governmental body, except as provided by Section 552.108[.]

Tex. Gov't Code § 552.022(a)(1).

The "information at issue" in this case consists of portions of a completed investigation made by the City's OIG. Therefore, as part of a completed investigation, it must be released unless it is excepted from disclosure under section 552.108 of the TPIA or is expressly confidential under "other law." *Id.* For the reasons set forth below, the information at issue is confidential by law under Texas Rule of Evidence 503.

**B.** **Texas Rules of Evidence comprise "other law" that makes information "expressly confidential" and not subject to disclosure under the TPIA.**

While considering a similar issue, the Texas Supreme Court ruled that the Texas Rules of Evidence are such "other law" which makes information "expressly confidential" in the context of section 552.022 of the TPIA. *See In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001); *see also Abbott v. City of Dallas*, 453 S.W.3d 580, 588-89 (Tex. App.—Austin 2014, pet. filed) (noting that the attorney-client privilege is "the 'oldest of privileges for confidential communications known to the common law'" and holding that the privilege was not waived by missing a TPIA deadline) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677 (1981)).

## C. The attorney-client privilege.

The attorney-client privilege protects from disclosure confidential communications between client and counsel made for the purpose of facilitating the rendition of legal services. Tex. R. Evid. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996). The privilege attaches to the complete communication—legal advice and factual information—between attorney and client, and the subject matter of the information in the communication is irrelevant to the determination of whether the privilege applies. *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 589 (Tex. App.—Dallas 1994, orig. proceeding)).

Texas Rule of Evidence 503(b)(1) provides:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

(A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer;

(B) between the lawyer and the lawyer's representative;

(C) by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

(D) between representatives of the client or between the client and a representative of the client; or

(E) among lawyers and their representatives representing the same client.

Tex. R. Evid. 503(b)(1). A communication is "confidential" if it is "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *Id.* 503(a)(5).

Rule 503 was amended in 1998, replacing the "control group" test with the "subject matter" test to determine whether a communication was made between a representative of a client and the client's lawyer. *See In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 226 n.3 (Tex. 2004); *accord Upjohn*, 449 U.S. at 394-97 (rejecting the "control group test" and applying the attorney-client privilege to interviews between employees and company lawyers in the course of an internal investigation into illegal payments to foreign governments). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390 (citations omitted).

In Texas, "[t]he subject matter test is met where 'the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.'" *DuPont*, 136 S.W.3d at 226 n.3 (quoting *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193 (Tex. 1993)). A "representative of the client" is not limited to upper management employees, but instead includes "any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client." Tex. R. Evid. 503(a)(2)(B).

When an attorney conducts an investigation in her capacity as an attorney for the purpose of providing legal services and advice to a client, an attorney's entire investigative report comes under the attorney-client privilege. *Harlandale*, 25 S. W.3d 328 (entire report privileged and not subject to disclosure); Tex. Att'y Gen. Op. No. OR2014-02684 at 3, 2014 WL 1254396 at *2 (Feb. 12, 2014) (CR_27) (citing and relying on *Harlandale* to find that most of the City's documents in its investigative file were protected by attorney-client privilege *in this case*); *accord Upjohn*, 449 U.S. at 395 (all of the interviews

and questionnaires circulated by general counsel to employees were protected by privilege).

### III. The information at issue was part of an internal investigation conducted at the behest of the City by City attorneys at OIG to provide legal advice to the City.

The information at issue consists of interviews conducted in the course of an internal investigation by the OIG into alleged wrongdoing by City employees in a City department. IAI at AG Jenkins(Brooks)00008-14, 00024-28; CR_22. These interviews are part of the OIG's investigative file and are incorporated into the OIG's investigative report. CR_22. In its opinion letter, the Attorney General ruled that most of the information that was part of the internal investigation was protected by the attorney-client privilege based on *Harlandale*, 25 S.W.3d 328. CR_27.

Even though *Harlandale* held that *all* of the material that was part of the report was privileged and could not be segregated out piecemeal, 25 S.W.3d at 333-34, the Attorney General and the trial court in this case have held exactly the opposite, contending that two interviews conducted in the course of that investigation and made part of the report are not privileged because those employees were being questioned about their own conduct in addition to conduct of others in the department. CR_42. Yet, this Court's precedent and other case law hold that the entire investigative report from an attorney's

internal investigation conducted at the behest of a corporate client is protected by attorney-client privilege, without regard to whether some of the interviewees had committed the wrongdoing under investigation.

**A.    The Attorney General's piecemeal approach to the investigative file is contrary to this Court's precedent and other case law.**

In *Harlandale*, a police sergeant who was reprimanded for inappropriate conduct had filed a formal grievance, which prompted Harlandale to hire an attorney to investigate the facts and write a report with recommendations. 25 S.W.3d at 329-30. After the attorney had conducted numerous interviews and wrote a report which included her findings and recommendations, a requestor asked for the report and all of the supporting exhibits pursuant to the TPIA. *Id.* at 330. Harlandale timely requested an opinion letter from the AG, claiming attorney-client privilege. *Id.* The AG's opinion letter in *Harlandale* parsed the report for the purposes of attorney-client privilege, holding that certain sections were "factual" and had to be disclosed while other parts could be withheld. 25 S.W.3d at 330 & nn.1, 2. This Court reversed and rendered for Harlandale, explaining that the entire report was privileged where the attorney was hired to investigate and give legal advice. *Id.* at 333-34.

Here, the Attorney General is again trying to parse an investigative report that is covered by attorney-client privilege, recognizing that "most" of

the information that was part of the investigation is protected by attorney-client privilege, but then selecting out two interviews as allegedly "not privileged" because the interviewees were purportedly subjects of the investigation. CR_27. But this Court has already rejected the Attorney General's piecemeal approach to an investigative report in *Harlandale*. There is no basis for the Attorney General to find that parts of the report should be subject to disclosure while finding the rest of the investigative file to be privileged.

The United States Supreme Court's sound reasoning in *Upjohn Company v. United States* is also instructive here, because the facts in *Upjohn* are similar to this case and because the Texas attorney-client privilege standard is similar to the federal standard.[3] 449 U.S. 383. In *Upjohn,* the client-corporation discovered that at least one of its overseas subsidiaries had made "questionable payments" to foreign governments. *Id*. at 386. Upjohn's general counsel conducted interviews and sent out questionnaires to numerous employees as part of an internal investigation to gather facts and render advice to Upjohn.

---

[3] *Cf. Upjohn*, 449 U.S. 383 (rejecting "control group" as the standard for attorney-client privilege in the corporate context and allowing for communications with lower- and middle-level employees to be privileged where they are conducted at the request of supervisors and concern the subject matter of their employment) *with DuPont*, 136 S.W.3d at 226 n.3 (explaining that amended Texas Rule of Evidence 503 replaced the control group test with the subject matter test); *see also Alpert v. Riley*, 267 F.R.D. 202, 208 (S.D. Tex. 2010) (finding that Texas Rule of Evidence 503 requirements for establishing privilege are similar to those required under federal common law); *Harlandale*, 25 S.W.3d at 333-34 (citing and finding instructive several federal cases, including *Upjohn*).

*Id.* at 386-87. The investigation in *Upjohn*, as here, involved queries of lower-level employees who were close enough to the actual events that their input as interviewees was invaluable to enable counsel to give Upjohn the legal advice to know how to proceed to rectify its situation. *Id.* at 391; IAI at AG Jenkins(Brooks)00008-14, 00024-28. When the Internal Revenue Service sought those interviews and questionnaires in a subsequent enforcement action, the Court held that the interviews and questionnaires of employees—regardless of whether they were lower level employees or part of a "control group"—were protected by attorney client privilege. *Upjohn*, 449 U.S. at 391-92, 395.

The Attorney General's distinction that some of the interviewees were "targets" of the investigation lacks merit, because nothing in *Upjohn* suggests that the Court made a distinction between interviews and questionnaires from the actual employees responsible for the "questionable payments" and those in the company who were not making the "possibly illegal" payoffs. In fact, implicit in the Supreme Court's holding is that the *very people* who were most helpful to interview were those at the center of, and even perpetrating, the misconduct. *See id.* at 391 (commenting that lower-level employees by their actions in the scope of their employment can "embroil" the corporation into legal difficulties and therefore their information is highly relevant and helpful).

*In re USA Waste Management Resources, L.L.C.* is also helpful here. 387 S.W.3d 92 (Tex App.—Houston [14th Dist.] 2012, orig. proceeding). Defendant Waste Management sought protection from the disclosure of a communication between its counsel and a former employee, Royda Jennings (Jennings). *Id.* at 95. Jennings was terminated after she was deposed in a third party case because her testimony contradicted information she gave to Waste Management in the course of that investigation. *Id.* Jennings sought to introduce an affidavit divulging the conversation between Waste Management's counsel and Jennings in preparation for her deposition. *Id.* On mandamus to prevent the court-ordered disclosure, the appellate court determined that the communication was privileged and not subject to disclosure because: 1) the communication was made at the direction of a supervisor in the corporation; and 2) the subject matter upon which the attorney's advice was sought is the performance by the employee of the employee's duties of her employment. *Id.* at 96, 97-98. The court reasoned that because Waste Management had a policy in place requiring full cooperation with investigations into workplace violence, and because Waste Management took steps to ensure that the conversation remained confidential, Waste Management had met its burden that the communication between Waste Management's counsel and Jennings was privileged. *Id.* at 97-98.

As in *Upjohn*, *Harlandale*, and *Waste Management*, the City's interviews with employees who were present when the wrongdoing occurred, either as witnesses or possible wrongdoers, was invaluable to the City's discovery of the extent and nature of the problems in a City department and to obtaining the legal advice on how to address it. The interviewees cooperated with the investigation pursuant to City policy of full cooperation with OIG investigations. AG Jenkins(Brooks)00008, 00024 at ¶ 3; CR_16. As part of the internal investigation, the interviews are privileged regardless of whether the interviewees' conduct was a subject of the communication. *See Valero*, 973 S.W.2d at 457 (the content of the communication does not matter for purposes of the attorney-client privilege).

Furthermore, the entire investigative report—including the factual interviews—was protected by the attorney-client privilege in *Harlandale*. 25 S.W.3d at 333. All of the interviews and questionnaires in *Upjohn* were protected by the privilege, 449 U.S. at 395, and all of the substance of the interview with Jennings was protected in *Waste Management*. 387 S.W.3d at 98. Accordingly, the interviews at issue were part of the City's internal investigation and are privileged, just like the interviews in *Harlandale*, *Upjohn*, and *Waste Management*.

**B.** **The parties involved in each communication at issue are identified on the face of the documents in question as being an attorney for the City and a City employee.**

The information at issue identifies OIG attorney Sandra W. Robinson as being from the "Office of Inspector General," and the personnel sheet lists her as working in the Legal Department. AG Jenkins(Brooks)00008, 00024 at ¶ 3; CR_19. In both statements at issue, the affiants state that they are employed by the City and provide their employee numbers. AG Jenkins(Brooks)00008, 00024 at ¶ 2. Accordingly, the documents identify the parties as a lawyer for the City and a City employee, and instruct that the employee is to cooperate fully in the investigation and keep the communication confidential. *Id.*

**C.** **Counsel for the City conducted the internal investigation in order to give advice to the City as the client.**

Just as outside counsel in *Harlandale* and in-house counsel in *Upjohn* and *Waste Management* were tasked with conducting internal investigations and recommending legal courses of action for their corporate clients, the attorneys in the OIG are the City's attorneys tasked with investigating and reporting facts and recommending a legal course of action for the City. *Harlandale*, 25 S.W.3d at 335; *Upjohn*, 449 U.S. at 390-91; *Waste Management*, 387 S.W.3d at 95; CR_14-16, 19. Like the attorney in *Harlandale*, the OIG compiled a report after conducting interviews with several employees, and the "Information at

18

Issue" in this case was used in that report. 25 S.W.3d at 330; CR_22, IAI at AG Jenkins(Brooks)00008-14, 00024-28. Like the in-house attorneys in *Upjohn* and *Waste Management*, the information gleaned from the internal investigation here enabled OIG attorneys Sandra W. Robinson and Inspector General Robin Curtis to render legal advice regarding personnel issues and departmental guidance. CR_14-16, 19.

### D. The communication is and has remained confidential.

Like *Waste Management* and *Upjohn*, the City took steps to ensure and maintain the confidentiality of the communications. *Waste Management*, 387 S.W.3d at 97; *Upjohn*, 449 U.S. at 395; IAI at AG Jenkins(Brooks)00008, 00024) (instructing interviewees that the statements are confidential and expressly prohibiting copying or distribution of same). The City admonished each interviewee not to discuss the investigation with anyone except that person's lawyer, and threatened prosecution if any non-employees (i.e., Jenkins or others) disseminated the document illegally. IAI at AG Jenkins(Brooks)00008, 00024. There is no indication or evidence that any third parties were present during the communication or that Jenkins represented either interviewee whose statements are at issue.

**E. The communication was made at the direction of the City and pursuant to the City's policy of full employee cooperation with the OIG.**

As mentioned above, both of the interviews at issue were between an attorney for the City and a City employee interviewed at the behest of the client-City. IAI at AG Jenkins(Brooks)00008, 00024. City policy requires all of its employees to cooperate with an OIG investigation; failure to do so is considered employee misconduct. CR_16. The interviewees were summoned by the OIG to give statements about their everyday work procedures and were questioned about documentation protocols for a program run by the City department in which they worked. IAI at AG Jenkins(Brooks)00009-14, 00025-28. While it is true that the boilerplate preamble to the statement states that the individual interviewees were furnishing voluntary statements not as a condition of employment, each interviewee was expected, as part of their duty as City employees, to cooperate fully with the investigation. CR_16; IAI at AG Jenkins(Brooks)00008, 00024. Indeed, the employees were specifically instructed to give full information about the situation to the OIG. IAI at AG Jenkins(Brooks)00008, 00024. The employees' cooperation with the investigation furthered the City's purposes to obtain legal advice about the prudent course of action regarding alleged wrongdoing in a City department. CR 9, 12; IAI at AG Jenkins(Brooks)00008, 00024.

Additionally, cooperating with the OIG investigation is part of the subject matter of each employee's job. CR_14-16, 19, IAI at AG Jenkins(Brooks)00008-14, 00024-28. The interviews themselves concerned the subject matter of the employee's employment, with the questions relating to day-to-day procedures and protocols used by each employee and a recounting of what happened on the job on key days in question. IAI at AG Jenkins(Brooks)00008-14, 00024-28. These interviews aided the OIG in obtaining a picture of what happened so that it could recommend a legal course of action to help the City program. AI at AG Jenkins(Brooks)00008-14, 00024-28.

## F. The factual information Jenkins seeks is available through other means.

Additionally, like those seeking the protected material in *Harlandale* and *Upjohn*, nothing prevents Jenkins from seeking out the individual employees to gather her own set of facts about what occurred in the department. *See Harlandale*, 25 S.W.3d at 335 (stating that "[i]n weighing these competing concerns [between the TPIA and attorney-client privilege], we need not surrender the *fundamental protections afforded by the privilege* to uphold the interests of the Act" and holding in favor of the privilege because requestor could obtain information from the same sources) (emphasis added); *accord*

*Upjohn*, 449 U.S. at 396 ("considerations of convenience do not overcome the policies served by the attorney-client privilege"). Indeed, Jenkins' letter request indicates that she was already aware of the identities of some, if not all, of the witnesses who could supply her with the factual information about the alleged wrongdoing in the affected City department. CR_12.

In sum, the City attorney's communication with the interviewees was conducted for the purpose of rendering legal advice to the City, was performed pursuant to City policy that all employees must cooperate fully with OIG investigations, was kept confidential, and concerned the subject matter for which the advice was sought: to receive an informed legal recommendation on the course of action regarding the possible wrongdoing in a City department. *See, e.g.*, *Harlandale*, 25 S.W.3d at 334-35 (attorney investigating facts and making recommendations is functioning as an attorney for the entire communication); *see also Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (attorney who performs tasks of an investigator in the process of providing legal services is functioning as an attorney); CR_12; 14-16; 19. Accordingly, the Court should reverse and render judgment for the City that the information at issue is protected by attorney client privilege and is not subject to disclosure.

**IV.    The City did not waive its privilege with respect to the Information at Issue.**

    **A.    The Attorney General has no evidence and there is no indication that the City disclosed the information at issue.**

Although it would have been the City's prerogative to refer a wrongdoer for criminal prosecution if a crime was uncovered, there is no evidence that either of the interviewees in question were ever referred to law enforcement, despite the Attorney General's insinuation that the mere possibility of referral waives the privilege. *See* CR_28 (City's investigation was complete). The privilege belongs to the City, as the client, and unless the City waives it, the attorney cannot be compelled to disclose matters that come within that privilege. *West v. Solito*, 563 S.W.2d 240, 244 n.2 (Tex. 1978). In addition, had the City referred the interviewees for prosecution, the exception for an ongoing criminal investigation would have applied to bar disclosure under the TPIA. *See* Tex. Gov't Code § 552.108; CR_27-28. In sum, there is no evidence that either of the interviews at issue has ever been divulged to anyone outside the City apart from *in camera* review by adjudicators as allowed by law.[4]

---

[4] The Attorney General and the reviewing courts have reviewed the documents *in camera* as permitted by law. *See Marathon Oil*, 893 S.W.2d at 593 ("As a reviewing court, we may conduct our own *in camera* inspection to determine whether a trial court properly applied the law of privilege to the documents.") (citing *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex. 1988) (orig. proceeding)); *see also* Tex. Gov't Code § 552.301(e)(1)(D) (providing the procedure for seeking an opinion from the Attorney General on documents subject to an exception under the TPIA); *id*. § 552.3221 (allowing for *in camera* inspection of the information at issue).

**B.      Making the Brooks statement available to his attorney does not waive the privilege for the information at issue.**

Although the Attorney General states that "[t]he underlying PIA request was in fact made by an attorney acting on behalf of one of the employees in question," CR_42 n.5, this gives an incorrect impression. Jenkins represented Brooks, but there is no indication or evidence that she represented anyone else in connection with this matter. The information at issue involves communications with *other employees* and not Brooks. *See* IAI at AG Jenkins(Brooks)00008-14, 00024-28 (Brooks is not the witness in either interview at issue). The City has made Brooks' testimony available to his lawyer, and that communication is not at issue here. *Id*. Nor does the City's disclosure of Brooks' testimony to his own lawyer operate as a waiver to the other documents—the information at issue—that have not been disclosed. *See In re Carbo Ceramics Inc.*, 81 S.W.3d 369, 376-77 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (holding that the voluntary disclosure of a letter "is not an automatic blanket waiver of the privilege for all other documents withheld on the basis of attorney-client privilege" where only the one document was disclosed); *Marathon Oil*, 893 S.W.2d at 592 (holding that the voluntary disclosure of some documents is not "an automatic, blanket waiver of the privilege for all underlying documents" that were not disclosed); *Nat'l*

*Union Fire Ins. Co. v. Hoffman*, 746 S.W.2d 305, 311 (Tex. App.—Dallas 1988, orig. proceeding) (trial court abused its discretion to find a blanket waiver).

Thus, although the City made Brooks' own statement available to his lawyer, it did not permit Brooks to be privy to interviews from *other employees*, because those interviews are confidential communications. *See, e.g.*, Texas Disciplinary Rule of Professional Conduct 1.12, cmt. 3 (providing that interviews between a lawyer and an employee made in the course of in internal investigation are confidential and may not be disclosed to other employees unless permitted by the organization); IAI at AG Jenkins(Brooks)00008, 00024 (indicating the confidential nature of the communication). Neither Brooks nor Jenkins is entitled to the contents of the communications between City lawyers and *other employees*, whether or not those employees were found to have been part of the problem with the City's program.

The interviewees whose statements are at issue gave those statements in cooperation with the OIG pursuant to City policy and at the City's behest. IAI at AG Jenkins(Brooks)00008-14, 00024-28; CR_14-16. The information is confidential attorney-client information when, as here, it is gleaned in the course of an investigation which is in furtherance of the client—the City— obtaining legal counsel about what course of action to take based on the findings in that investigation. *See Harlandale*, 25 S.W.3d at 334-35; *Upjohn*, 449

U.S. at 394. No waiver occurred, and thus the information at issue is protected by attorney-client privilege.

## Conclusion and Prayer

Because the City established that the information at issue is a confidential communication between representatives of the client-City and the City's counsel for the purpose of aiding the City in obtaining legal advice, and there is no evidence that the privilege has been waived, the Court should reverse and render judgment for the City that the remaining information at issue is not subject to disclosure.

For the foregoing reasons, the City respectfully requests that the Court: 1) reverse the judgment of the trial court; 2) render judgment for the City that the remaining "information at issue," IAI at AG Jenkins(Brooks)00008-14, 00024-28, is protected from disclosure by the attorney-client privilege; 3) grant the City its costs and expenses; and 4) grant the City any other relief to which it is entitled.

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section


By: _/s/ Mary Beth Stevenson_
    Mary E. (Mary Beth) Stevenson
    Assistant City Attorney
    SBN: 24072366
    CITY OF HOUSTON LEGAL
    DEPARTMENT
    900 Bagby, 4th Floor
    Houston, Texas 77002
    832.393.6491 (Telephone)
    832.393.6259 (Facsimile)
    marybeth.stevenson@houstontx.gov

*Attorneys for Appellant*


## Certificate of Compliance

I certify that the foregoing was prepared in Microsoft Word 2010 Version 14.0 in Calisto MT 14 point font; the word-count function shows that, excluding those sections exempted under TRAP 9.4(i)(1), the brief contains 5,727 words.

_/s/ Mary Beth Stevenson_
Mary E. (Mary Beth) Stevenson

## Certificate of Service

I hereby certify that on this 24th day of June, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service.

Matthew R. Entsminger
Assistant Attorney General
Open Records Litigation
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
matthew.entsminger@texasattorneygeneral.gov

*Attorney for Appellee*

*/s/ Mary Beth Stevenson*
Mary E. ("Mary Beth") Stevenson

Exhibit A

CAUSE NO. D-1-GV-14-000227

| | | |
|---|---|---|
| THE CITY OF HOUSTON, TEXAS, | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| v. | § | 250th JUDICIAL DISTRICT |
| | § | |
| GREG ABBOTT, ATTORNEY | § | |
| GENERAL OF TEXAS, | § | |
| *Defendant.* | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

On October 28, 2014, a hearing was held on the parties' motions for summary judgment. Plaintiff City of Houston, Texas (the City) and Defendant Greg Abbott, Attorney General of Texas, appeared through counsel. This is a lawsuit under the Public Information Act, by which Plaintiff sought relief from a ruling of the Attorney General. The Court, having considered the testimony and documentary evidence, the pleadings, and arguments of counsel, enters the following declaration and orders.

IT IS THEREFORE ORDERED AND DECLARED that Defendant's Cross-Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment is DENIED. It is further ORDERED that the information at issue is not privileged pursuant to Rule 503 of the Texas Rules of Evidence and the City must disclose this information to the requestor.

This Order disposes of all claims between all parties and is a final judgment.

Signed this __25th__ day of __October__, 2014.

_____
JUDGE PRESIDING

AGREED AS TO FORM:

MATTHEW R. ENTSMINGER
State Bar No. 24059723
Assistant Attorney General
Open Records Litigation
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4151
Facsimile: (512) 457-4686
matthew.entsminger@texasattorneygeneral.gov

ATTORNEY FOR DEFENDANT GREG ABBOTT,
ATTORNEY GENERAL OF TEXAS

DAVID L. RED
State Bar No. 16656900
Senior Assistant City Attorney
City of Houston's City Attorney's Office
P.O. Box 368
Houston, Texas 77001-0368
Telephone: (832) 393-6293
Facsimile: (832) 393-6259
david.red@houstontx.gov

ATTORNEY FOR PLAINTIFF CITY OF
HOUSTON, TEXAS

Exhibit B

| Vernon's Texas Rules Annotated |
| --- |
| Texas Rules of Evidence (Refs & Annos) |
| Article V. Privileges (Refs & Annos) |

TX Rules of Evidence, Rule 503

Rule 503. Lawyer-Client Privilege

**(a) Definitions.** In this rule:

**(1)** A "client" is a person, public officer, or corporation, association, or other organization or entity--whether public or private--that:

**(A)** is rendered professional legal services by a lawyer; or

**(B)** consults a lawyer with a view to obtaining professional legal services from the lawyer.

**(2)** A "client's representative" is:

**(A)** a person who has authority to obtain professional legal services for the client or to act for the client on the legal advice rendered; or

**(B)** any other person who, to facilitate the rendition of professional legal services to the client, makes or receives a confidential communication while acting in the scope of employment for the client.

**(3)** A "lawyer" is a person authorized, or who the client reasonably believes is authorized, to practice law in any state or nation.

**(4)** A "lawyer's representative" is:

**(A)** one employed by the lawyer to assist in the rendition of professional legal services; or

**(B)** an accountant who is reasonably necessary for the lawyer's rendition of professional legal services.

**(5)** A communication is "confidential" if not intended to be disclosed to third persons other than those:

**(A)** to whom disclosure is made to further the rendition of professional legal services to the client; or

**(B)** reasonably necessary to transmit the communication.

**(b) Rules of Privilege.**

**(1)** *General Rule*. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made to facilitate the rendition of professional legal services to the client:

**(A)** between the client or the client's representative and the client's lawyer or the lawyer's representative;

**(B)** between the client's lawyer and the lawyer's representative;

**(C)** by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action;

**(D)** between the client's representatives or between the client and the client's representative; or

**(E)** among lawyers and their representatives representing the same client.

**(2)** *Special Rule in a Criminal Case*. In a criminal case, a client has a privilege to prevent a lawyer or lawyer's representative from disclosing any other fact that came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship.

**(c) Who May Claim.** The privilege may be claimed by:

**(1)** the client;

**(2)** the client's guardian or conservator;

**(3)** a deceased client's personal representative; or

**(4)** the successor, trustee, or similar representative of a corporation, association, or other organization or entity--whether or not in existence.

The person who was the client's lawyer or the lawyer's representative when the communication was made may claim the privilege on the client's behalf--and is presumed to have authority to do so.

**(d) Exceptions.** This privilege does not apply:

**(1)** *Furtherance of Crime or Fraud*. If the lawyer's services were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.

**(2)** *Claimants Through Same Deceased Client.* If the communication is relevant to an issue between parties claiming through the same deceased client.

**(3)** *Breach of Duty By a Lawyer or Client.* If the communication is relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer.

**(4)** *Document Attested By a Lawyer.* If the communication is relevant to an issue concerning an attested document to which the lawyer is an attesting witness.

**(5)** *Joint Clients.* If the communication:

**(A)** is offered in an action between clients who retained or consulted a lawyer in common;

**(B)** was made by any of the clients to the lawyer; and

**(C)** is relevant to a matter of common interest between the clients.

Rules of Evid., Rule 503, TX R EVID Rule 503
Current with amendments received through 3/15/2015

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.



Exhibit C

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 5. Open Government; Ethics (Refs & Annos)
      Subtitle A. Open Government
        Chapter 552. Public Information (Refs & Annos)
          Subchapter H. Civil Enforcement

V.T.C.A., Government Code § 552.3221

§ 552.3221. In Camera Inspection of Information

Effective: September 1, 2013

(a) In any suit filed under this chapter, the information at issue may be filed with the court for in camera inspection as is necessary for the adjudication of the case.

(b) Upon receipt of the information at issue for in camera inspection, the court shall enter an order that prevents release to or access by any person other than the court, a reviewing court of appeals, or parties permitted to inspect the information pursuant to a protective order. The order shall further note the filing date and time.

(c) The information at issue filed with the court for in camera inspection shall be:

(1) appended to the order and transmitted by the court to the clerk for filing as "information at issue";

(2) maintained in a sealed envelope or in a manner that precludes disclosure of the information; and

(3) transmitted by the clerk to any court of appeal as part of the clerk's record.

(d) Information filed with the court under this section does not constitute "court records" within the meaning of Rule 76a, Texas Rules of Civil Procedure, and shall not be made available by the clerk or any custodian of record for public inspection.

(e) For purposes of this section, "information at issue" is defined as information held by a governmental body that forms the basis of a suit under this chapter.

V. T. C. A., Government Code § 552.3221, TX GOVT § 552.3221
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit D

| Vernon's Texas Statutes and Codes Annotated |
| --- |
| Government Code (Refs & Annos) |
| Title 5. Open Government; Ethics (Refs & Annos) |
| Subtitle A. Open Government |
| Chapter 552. Public Information (Refs & Annos) |
| Subchapter H. Civil Enforcement |

V.T.C.A., Government Code § 552.324

§ 552.324. Suit by Governmental Body

Effective: September 1, 2009

(a) The only suit a governmental body may file seeking to withhold information from a requestor is a suit that:

(1) is filed in a Travis County district court against the attorney general in accordance with Section 552.325; and

(2) seeks declaratory relief from compliance with a decision by the attorney general issued under Subchapter G.[1]

(b) The governmental body must bring the suit not later than the 30th calendar day after the date the governmental body receives the decision of the attorney general determining that the requested information must be disclosed to the requestor. If the governmental body does not bring suit within that period, the governmental body shall comply with the decision of the attorney general. If a governmental body wishes to preserve an affirmative defense for its officer for public information as provided in Section 552.353(b)(3), suit must be filed within the deadline provided in Section 552.353(b)(3).

V. T. C. A., Government Code § 552.324, TX GOVT § 552.324
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit E

Vernon's Texas Statutes and Codes Annotated
 Government Code (Refs & Annos)
  Title 5. Open Government; Ethics (Refs & Annos)
   Subtitle A. Open Government
    Chapter 552. Public Information (Refs & Annos)
     Subchapter C. Information Excepted from Required Disclosure

V.T.C.A., Government Code § 552.108

§ 552.108. Exception: Certain Law Enforcement, Corrections, and Prosecutorial Information.

Effective: September 1, 2005

 (a) Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted from the requirements of Section 552.021 if:

 (1) release of the information would interfere with the detection, investigation, or prosecution of crime;

 (2) it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation that did not result in conviction or deferred adjudication;

 (3) it is information relating to a threat against a peace officer or detention officer collected or disseminated under Section 411.048; or

 (4) it is information that:

   (A) is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or

   (B) reflects the mental impressions or legal reasoning of an attorney representing the state.

(b) An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from the requirements of Section 552.021 if:

 (1) release of the internal record or notation would interfere with law enforcement or prosecution;

 (2) the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication; or

 (3) the internal record or notation:

(A) is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or

(B) reflects the mental impressions or legal reasoning of an attorney representing the state.

(c) This section does not except from the requirements of Section 552.021 information that is basic information about an arrested person, an arrest, or a crime.

V. T. C. A., Government Code § 552.108, TX GOVT § 552.108
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**                                            © 2015 Thomson Reuters. No claim to original U.S. Government Works.